HORROCKS DESK COMPANY, Appellant, *v.* STATE OF NEW YORK, Respondent.

Fourth Department, September 22, 1925.

**State — claim against State under Canal Law, § 47, for damage caused by overflow of West Canada creek — claimant contends that closing south channel of Mohawk east of mouth of West Canada creek caused ice jam — decision by Court of Claims that damage was not caused by closing south channel not contrary to evidence.**

In an action against the State under section 47 of the Canal Law to recover for damage to property on West Canada creek, alleged to have been caused by the creek overflowing, in which the claimant contends that the act of the State in closing the south channel of the Mohawk river, a short distance east of the mouth of West Canada creek, prevented floating ice from passing into and possibly through that channel and thereby caused the ice to jam in West Canada creek and the water to overflow the banks, the evidence in support of the contention is not so clear and preponderating as to justify a reversal of the judgment of the Court of Claims in favor of the State. The decision by the Court of Claims that the closing of the channel was not the direct cause of the ice jam is supported by the evidence.

APPEAL by the claimant, Horrocks Desk Company, from a judgment of the Court of Claims in favor of the defendant, entered in the office of the clerk of said court on the 24th day of July, 1919.

*Snyder, Cristman & Earl [Charles E. Snyder* of counsel], for the appellant.

*Albert Ottinger, Attorney-General [John H. Clogston, Deputy Attorney-General,* of counsel], for the respondent.

CROUCH, J.:

The action is against the State under section 47 of the Canal Law (as amd. by Laws of 1915, chap. 494). It is alleged that as a result of negligence in the construction of the Barge canal, claimant suffered damages from water thrown out of the channel of the West Canada creek.

The West Canada creek is a large stream coming down from the Adirondacks, and emptying into the Mohawk river just east of Herkimer. A short distance east of the creek the Mohawk river, prior to 1910, divided into two channels, known as the north and south channels. Between them was located Herkimer island. The north channel was the deeper, and constituted the main channel of the river as it flowed east.

South of the Mohawk was the old Erie canal. The strip of land between the river and the canal was the towpath. In connection with the Barge canal improvement, there was constructed, from

a bend in the towpath bank of the Erie canal, just west of the entrance to the south channel, an embankment extending easterly across the south channel and across Herkimer island, along the north shore of the south channel. This old south channel of the Mohawk was thus made into a part of the canal.

It is reasonably clear that the south channel, prior to the building of the embankment, furnished a considerable acreage for the storage of flood ice, even though such ice did not pass all the way through.

On the night of Friday, January 21, 1910, the weather grew mild, and a rain set in. The result was a freshet in the West Canada creek, which loosened and broke up the ice therein, and on the following day, to wit, January twenty-second, that ice began to float downstream, and into the Mohawk. In the course of the afternoon of that day, the ice in the creek began to jam, and apparently by nightfall there was a solid body of jammed cakes of ice in the creek from its mouth up beyond the trolley, New York Central and turnpike bridges, about as far as the pump station. The freshet lasted for three days. The weather grew cold, the jam in the creek froze, a snow came, and thus the creek remained solidly filled with ice until the twenty-eighth of February following. Then suddenly came the spring break-up. Ice jams further up the creek gave way, and the accumulated waters brought the ice down, piling it up over the tail of the existing jam and against the bridges, so that there was no opportunity for the flood waters to follow the channel of the creek. It accordingly broke through or over the banks of the creek in several places, washed down over the low ground where claimant's factory was located, and did the damage complained of.

The Court of Claims has found as facts, *first*, that " from the 22nd day of January, 1910, to February 28, 1910, the West Canada creek was filled and jammed solid with ice, extending from the Mohawk river up to the pump house in the vicinity of plaintiff's property;" and *second*, " because of this solid jam of ice in the West Canada creek, the waters of the West Canada creek were thrown out of its banks onto the plaintiff's property, and did the damage complained of."

It is the contention of the claimant that this ice jam, which was the cause of the flood, was itself caused by the acts of the State in closing up the south channel of the Mohawk with the embankment, thus narrowing the natural flood channel of the river. Claimant's theory is that on January 22, 1910, when the channel of the creek was open, freely running off and carrying out the accumulated ice, the force of the stream threw the ice cakes well

out into the river, where the combination of the force of the creek current and of the river current swept them over against the embankment across the south channel, there to find lodgment; that gradually the ice accumulated, and in the afternoon of that day, when the great volume of ice came down, formed a solid mass extending from the embankment diagonally back across the river to the mouth of the creek, whence the oncoming ice accumulated and extended upstream, forming the jam. Claimant says that had the south channel been open under the flood conditions existing, ice would have been carried into and possibly through the south channel, and the mouth of the creek would thus have been kept free; that with the ice free to make its exit from the creek into the river, the jam, which was the primary cause of the later flood, would not have formed. It says that the act of the State in thus blocking the channel and narrowing it constituted negligence, which was the proximate cause of claimant's damage.

Claimant's argument here is directed chiefly to the point that the embankment was, in the manner above described, the direct cause of the ice jam in the creek; and that the decision of the Court of Claims to the contrary is without support in the evidence and in any event is against its weight. On that point we are not convinced.

Two witnesses testified on behalf of claimant to seeing the ice come out of the creek, lodge against the embankment and form the jam. One of them, however, also testified that the jam extended downstream 200 feet below the entrance of the south channel, thus leaving room for speculation as to the part really played by the embankment. Three other witnesses for claimant testified to seeing the ice jammed across the river from the embankment and up the creek at times subsequent to January twenty-second.

On the other hand, one witness for the State testified that the jam, as it existed on the afternoon of January twenty-second, extended from a point far down the river and for a distance of 300 feet up the river from the mouth of the creek; that it disintegrated more or less or gave way, going on down the river; that it then jammed again and gradually worked up the river as before; and that this process was repeated several times. The witness was far from clear in his testimony, but the effect of it all seems fairly to have been as above stated. This witness and a number of others further testified that shortly after January twenty-second, and perhaps during the night of that day, the river freed itself from ice at the mouth of the creek, leaving the jam in the creek extending up to the pump house.

So, in what may be called the direct evidence there is a sub-

stantial conflict on claimant's basic point. But beyond that there is in the evidential background the physical formation of West Canada creek with its shallow bed, low banks, obstructions and slight fall after it emerges from the hills to cross the valley and empty in the Mohawk; and there is a long history of ice jams and floods which differ only in details from the one here in question. Causal relationships in such cases are at best difficult to determine. We are unable to say, after careful consideration of the long record and the able briefs of counsel, that the evidence in support of the claim is so clear and preponderating as to justify a reversal.

The judgment should, therefore, be affirmed, with costs.

Hubbs, P. J., Clark, Davis and Sears, JJ., concur.

Judgment affirmed, with costs.